HENRY R. STRAND, JR. vs. CHARLOTTE N. HUBBARD
& others[1]
(and a companion case[2]).

No. 88-P-570.

Barnstable. February 15, 1989. — August 14, 1989.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Practice, Civil,* Frivolous action, Costs, Counsel fees.

On a motion for costs and attorney's fees to be assessed following a Probate
Court decision holding a will contestant bound by the terms of a settle-
ment in compromise of a will, the judge erred in making an award under
G. L. c. 231, § 6F, where, in view of his ruling in the contestant's
favor on one of her principal claims at trial, it could not be said that
the contestant's position in the Probate Court was "wholly insubstantial"
or "frivolous." [685-686]

Discussion of the meritoriousness of a will contestant's appeal from a judg-
ment of a Probate Court holding her bound by the terms of a consolidated
settlement in compromise of the will for purposes of guidance to the
trial judge in the event that he should be asked to reconsider a motion
for appellate fees and expenses under G. L. c. 215, § 45. [686-688]

PETITION for probate filed in the Barnstable Division of the
Probate and Family Court Department on March 15, 1983.

CIVIL ACTION commenced in the Barnstable Division of the
Probate and Family Court Department on July 5, 1983.

After the decision of this court in 24 Mass. App. Ct. 372
(1987), a motion for counsel fees, costs and expenses was
heard by *James M. Sweeney,* J., and was reviewed in the
Appeals Court by *Smith,* J.

[1] The First National Bank of ·Boston and William F. Kehoe, special
co-administrators, and Crotched Mountain Foundation. This is an equity
action brought by Henry Strand to confirm his ownership of certain bank
accounts and the contents of a safety deposit box which had been held
jointly with the deceased brother.

[2] Charlotte N. Hubbard *vs.* C. A. Peairs. In this action Hubbard was
contesting the will of her deceased brother.

*Charles F. Dodson* for Charlotte N. Hubbard.

*Zachary R. Karol* (*Donald E. Groton, William F. Kehoe, Richard A. Howard & James A. G. Hamilton* with him) for the plaintiff.

ARMSTRONG, J.  These actions are before us for the second time. In *Hubbard* v. *Peairs*, 24 Mass. App. Ct. 372 (1987), we affirmed a judgment of a Probate Court holding Charlotte Hubbard bound by the terms of a consolidated settlement that she had agreed to the evening of December 4, 1984. Following that decision, the other parties to the settlement filed a motion for costs and attorney's fees to be assessed against Hubbard under the provisions of G. L. c. 231, §§ 6F and 6G, or, alternatively, under G. L. c. 215, § 45. The judge's order on the motion was framed in the language of G. L. c. 231, § 6F; he found that "all or substantially all of the claims raised by Charlotte in connection with the proceedings in the Probate Court and the Appeals Court regarding the enforceability of that compromise agreement were wholly insubstantial, frivolous, and not advanced in good faith," and he assessed counsel fees, costs, and expenses against Hubbard of $91,605.11 for the proceedings in the Probate Court and $62,845.40 for those in connection with the appeal. Hubbard appealed this order under G. L. c. 231, § 6G, to a single justice of this court, who affirmed the order. The case is before us on Hubbard's appeal from the order of the single justice.[3]

1. *The award for counsel fees and expenses at trial*. A criterion for an award under G. L. c. 231, § 6F, is that "all

---

[3] The appellees seem to assume the case is before us as well on a direct appeal from the order of the probate judge, and they ask us to affirm the order on the alternate basis, G. L. c. 215, § 45. Assuming the appeal filed in the Probate Court can serve both to bring a § 6F basis for the award before a single justice and a § 45 basis before a panel, we think that in this case the probate judge was acting under § 6F and that he omitted treating the motion under § 45, presumably because it was not necessary. If, as a result of the decision in this appeal, the appellees wish to press again their motion in its alternative aspect under the criteria applicable to awards under § 45, they may do so; but, in considering such a motion, the probate judge should take into account the view expressed in this opinion concerning the justifiability of Hubbard's position both in the Probate Court and in the appeal to this court.

or substantially all" of the claims or defenses are frivolous. Such was not the case here. The trial judge ruled in Hubbard's favor on one of her principal claims, namely, that she was not bound by the terms of the agreement as read into the court record on December 5, 1984 (referred to in *Hubbard* v. *Peairs*, 24 Mass. App. Ct. at 376 n.5, as "the Kehoe statement"), or by the written agreement circulated on December 7. In effect, the judge sustained Hubbard's claim that her local attorney was not authorized to agree on her behalf to the terms added after December 4 and that those terms were of sufficient substance to be unenforceable without her authorization. In view of that ruling, it cannot be said that Hubbard's position in the Probate Court was "wholly insubstantial" or "frivolous." Compare *Strand* v. *Herrick & Smith*, 396 Mass. 783, 791-792 (1986). It was thus incorrect to award damages under G. L. c. 231, § 6F.

2. *The award for appellate fees and expenses.* The more difficult question is whether Hubbard was justified in appealing after the judge had excised the additional terms from the written agreement and the Kehoe statement and entered judgment in accordance with the terms he found Hubbard had agreed to on the night of December 4. Hubbard claimed many errors, some of which were plainly without merit. Hubbard had, nevertheless, a viable claim that it was error for the judge to enforce as a binding agreement the terms that Hubbard viewed as her negotiating position on the night of December 4. Her position — not unreasonable — was that her offer of settlement that night was not accepted as such by the other parties and that the Kehoe statement, containing the December 4 terms but also terms to which she was unwilling to agree, was in effect a counteroffer to which her attorney was not authorized to give assent. At that point, in her view, she was privileged to walk away from the terms that she had been willing to accept on December 4, as no agreement had been reached.

That was not an untenable position on appeal. It did not conflict with the facts as found by the judge. If its essentially contract-based approach was not regarded as pivotal to the appeal, it was doubtless because, after termination of the trial,

the question whether to uphold the settlement in some respects transcended the interests of the parties to it. Midtrial settlements are frequently hammered out without the precision and attention to detail that should characterize professionally written contracts, and terms ancillary to the principal points of agreement may be dealt with roughly or not at all. But when the parties advise the judge that they have reached a settlement and that the trial, with its inevitable commitment of public resources, may be aborted, the parties must realize that the court cannot allow the settlement to be set aside for insubstantial reasons but may itself fashion reasonable adjustments to carry out the parties' main purposes at the time when they thought they had reached agreement.

Thus, the approach of the court in *Hubbard* v. *Peairs* was not strictly contractual in its orientation. Rather, the decision characterized the trial judge's deletions of terms contained in the Kehoe statement as having been done "out of considerations of fairness to [Hubbard], to insure that she should not in any event be held to points to which she had not in truth agreed." 24 Mass. App. Ct. at 377. The decision reasoned that her attorney's "authority on December 5 certainly extended to the terms that [Hubbard] had agreed to . . ., which terms appeared in the judge's order" and that "[t]he net result was that [Hubbard] received treatment of which she could hardly complain . . . ." *Ibid.*

The essence of the decision in *Hubbard* v. *Peairs* was recognition of a proposition not clearly articulated in the decisional law [4] that, after trial has been cut short or averted by the parties' announcement of settlement, followed by disagreement as to its terms, the judge has discretion to compel adherence to terms representing the substantial points of agreement, avoiding

---

[4] The court's decision could be said, however, to be foreshadowed in a general way by such cases as *Savage* v. *Blanchard,* 148 Mass. 348 (1889), *Somerville* v. *New York, New Haven & Hartford R.R.,* 285 Mass. 539, 543 (1934), *Dalton* v. *Post Publishing Co.,* 328 Mass. 595, 599 (1952), and *Swift* v. *Hiscock,* 344 Mass. 691, 693-694 (1962). Those cases emphasize the significance of the trial court's reliance on the parties' announcement that they have settled the case.

thereby a second commitment of the court's scarce trial resources. The decision in *Hubbard* v. *Peairs* did not characterize Hubbard's appeal as frivolous, and in our view it was not frivolous.

The meritoriousness of Hubbard's appeal from the judgment has been discussed primarily to guide the trial judge in the event that he should be asked to reconsider the motion under G. L. c. 215, § 45. In the past the practice seems to have been for the appellate court itself to determine motions for appellate costs and counsel fees. See, e.g., *Goodwin Bros. Leasing, Inc.* v. *Nousis*, 373 Mass. 169, 177 (1977); *Katz* v. *Savitsky*, 10 Mass. App. Ct. 792, 798 (1980); *Leventhal* v. *American Discount Corp.*, 11 Mass. App. Ct. 959, 960 (1981); *Miaskiewicz* v. *LeTourneau*, 12 Mass. App. Ct. 880, 882 (1981). The general rule is that appellate costs, except under the automatic provisions of Mass.R.A.P. 26(a), 365 Mass. 873 (1974), as amended, 378 Mass 925 (1979), are awardable only as ordered by the appellate court. *Morochnick* v. *Quigley*, 394 Mass. 651, 652-653 (1985). The appellate court may, of course, make a determination that the appeal meets the criteria of 6F and order counsel fees to be determined in the trial court. See, e.g., *Westwood Lodge Corp.* v. *A-Copy Inc.*, 25 Mass. App. Ct. 1107 (1987).

The order of the single justice is reversed, and a new order is to be entered reversing the order of the Probate Court awarding counsel fees and expenses.

*So ordered.*